## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SPRINGBOARDS TO EDUCATION, INC., | § | |
| *Plaintiff,* | § | C.A. No. 4:16-cv-02625 |
| | § | |
| v. | § | |
| | § | |
| HOUSTON INDEPENDENT | § | JURY TRIAL DEMANDED |
| SCHOOL DISTRICT, et al., | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF SPRINGBOARDS TO EDUCATION, INC.'S RESPONSE TO DEFENDANT HOUSTON INDEPENDENT SCHOOL DISTRICT'S <u>MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND (6)</u>

## **TABLE OF CONTENTS**

I.    SUMMARY .................................................................................................1

II.   BACKGROUND .........................................................................................3

III.  LEGAL STANDARDS ...............................................................................4

IV.   SPRINGBOARDS' FEDERAL CLAIMS ARE WELL PLEADED AND
      SHOULD NOT BE DISMISSED UNDER RULE 12(b)(6)..........................5

      A.    Springboards has Provided Ample Notice of its Trademark
            Infringement Claims.......................................................................6

            i.    Springboards Adequately Identified its Unregistered
                  Trademarks in its Complaint.................................................7

            ii.   Springboards Has Plainly Alleged How HISD Infringed Each
                  of Its Trademarks .................................................................8

            iii.  Springboards Use of Its Marks Constitutes "Use in Commerce"
                  under the Lanham Act..........................................................11

      B.    Springboards Adequately Pleaded Every Element of a Trademark
            Dilution Claim..............................................................................12

      C.    Springboards Adequately Pleaded Every Element of a Trademark
            Counterfeiting Claim....................................................................13

V.    SPRINGBOARDS' STATE LAW CLAIMS SHOULD NOT BE
      DISMISSED ...............................................................................................15

      A.    HISD's Unauthorized Use of Springboards' Trademarks Is Not a
            Governmental Function Entitled to Governmental Immunity ............16

      B.    If the Immunity Doctrine Forecloses a Remedy, HISD's Infringement
            Constitutes a Taking......................................................................18

VI.   CONCLUSION...........................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).........................................................................4-5

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)...........................................................................5

*Blackmon v. Am. Home Prods. Corp.*
   328 F. Supp. 2d 647 (S.D. Tex. 2004).........................................5, 12

*City of Georgetown v. Lower Colorado River Auth.*
   413 S.W.3d 803 (Tex. App. – Austin 2013, pet. dism'd)..................16

*Dell, Inc. v. This Old Store, Inc.*
   2007 WL 1958609 (S.D. Tex. July 2, 2007) ...................................10

*Eastern Enterprises v. Apfel*
   524 U.S. 498 (1998).........................................................................18

*In re Elec. Data Sys. Corp. "ERISA" Litig.*
   305 F. Supp. 2d 658 (E.D. Tex. 2004)..............................................6

*Films of Distinction v. Allegro Film Prods.*
   12 F. Supp. 2d 1068 (C.D. Cal. 1998) ............................................13

*Hishon v. King & Spalding*
   467 U.S. 69 (1984)............................................................................6

*Interstate Batter Sys. of Am. v. Wright*
   811 F. Supp. 237 (N.D. Tex. 1993) .................................................14

*LTTS Charter Sch., Inc. v. C2 Constr., Inc.*
   358 S.W.3d 725 (Tex. App. 2011)....................................................17

*Lucas v. So. Carolina Coastal Council*
   505 U.S. 1003 (1992).......................................................................18

*McCollim v. Allied Custom Homes, Inc.*
   CIV. A. H-08-3754, 2009 WL 1098459 (S.D. Tex. Apr. 23, 2009) ...................5

*Ramming v. United States*
  281 F.3d 158 (5th Cir. 2001) ............................................................6, 9

*Reynolds v. Sims*
  377 U.S. 533 (1964)...............................................................................16

*Steele v. Bulova Watch Co.*
  344 U.S. 280 (1952).................................................................................5

*Tempur-Pedic Int'l Inc. v. Angel Beds LLC*
  902 F. Supp. 2d 958 (S.D. Tex. 2012).....................................................5

*Tooke v. City of Mexia*
  197 S.W.3d 325 (Tex. 2006) ................................................................16

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*
  128 F.3d 86 (2nd Cir. 1997) ......................................................... 11-12

*Wasson Interest, Ltd. v. City of Jacksonville*
  489 S.W. 3d 427 (Tex. 2016) ...............................................................16

**Statutes**

Lanham Act.................................................................................4-5, 11-12

15 U.S.C. §1117(b) ................................................................................14

15 U.S.C. §1114(a)(1)............................................................................14

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)..............................................................................4

Fed. R. Civ. P. 12(b)(6).............................................................................6

## I.   <u>SUMMARY</u>

Plaintiff Springboards to Education, Inc. ("Springboards") brought this civil action against Defendant Houston Independent School District's ("HISD" or "Defendant") for trademark infringement, trademark dilution, unfair competition, and related state law claims. Defendant now challenges all counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Defendant's challenge to Counts I, II, III, and IV, trademark counterfeiting, infringement, false designation or origin, and dilution under the Lanham Act, is based on a misapplication of the standards of both Rule 12(b)(1) and 12(b)(6). Rather than applying the liberal pleading requirements under the Federal Rules of Civil Procedure -- which require little more than that the pleadings be plausible on their face -- Defendant improperly seeks to force Plaintiff to establish each and every allegation and claim at the pleading stage. Moreover, Defendant articulates an incorrect interpretation of "use in commerce" under the Lanham Act.

Plaintiff's Complaint alleges in detail that Springboards' trademarks, which include the "Million Dollar Reader", "Millionaire's Reading Club", "Millionaire Reader", and "Read a Million Words" marks, are the subject of federal service mark registrations, have been in continuous and substantially exclusive use since 2005 and 2006, well prior to Defendant's first use of the "Millionaire"-formative marks. The Complaint further alleges that HISD has adopted and used in commerce a mark that

1

is identical to Plaintiff's "Millionaire Club" mark in connection with paper goods in International Class 16.  Springboards has also alleged that the respective marks are confusingly similar to one another. Springboards has alleged that it will be damaged by Defendant's use of its "Millionaire Club" and other marks. Finally, Springboards has alleged that its marks are "famous" under the Lanham Act with respect to its dilution claim. Construing the facts and all reasonable inferences therefrom in the light most favorable to Plaintiff, as required by Rule 12(b)(6), the Court must conclude that Plaintiff has alleged sufficient facts to bring viable claims under the Lanham Act for trademark counterfeiting, infringement, false designation or origin, and dilution.

Defendant's Motion to Dismiss Count V, which is a claim under the Texas Anti-Dilution Statute, and Counts VI and VII, which are claims for common law trademark infringement and unfair competition, are likewise without merit because HISD's assertion that it is immune from all liability for state torts that do not involve a motor vehicle is incorrect.

Construing the facts and all reasonable inferences therefrom in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to support viable claims for trademark counterfeiting, trademark infringement, trademark dilution, unfair competition, and under the Texas Anti-Dilution Statute.

For the reasons set forth below, Defendant's motion to dismiss must be denied.

## II.   **BACKGROUND**

Plaintiff Springboards to Education, Inc. ("Springboards") owns various registered United States trademarks, including "Million Dollar Reader" (U.S. Reg. No. 4,291,796),   "Millionaire's Reading Club" (U.S. Reg. No. 4,162,765), "Millionaire Reader" (U.S. Reg. No. 4,080,513),  and "Read a Million Words," (U.S. Reg. No. 3,955,345). Springboards adopted these trademarks to identify its literacy-promotion goods and services.  The success of Springboards' services offered under its marks has been shown by their widespread use in Texas and other states in connection with Springboards' reading programs and related educational products, which are designed to motivate, guide, and empower students to strive for academic success.  Springboards continues to use its trademarks to promote reading programs and other educational products for children, and spends substantial resources in marketing and promoting the Springboards marks. Springboards has sold hundreds of thousands of dollars of products and services bearing its trademarks since 2005 and has worked diligently to create its brands. Through its sustained efforts and creative use of marks such as "Millionaire Reader," Springboards has been successful in promoting valuable literary programs.

Defendant Houston Independent School District ("HISD") has repeatedly

used Springboards' trademarks, without authorization, to identify its own unaffiliated summer reading program. For example, HISD has titled its summer reading program "Millionaire Club" and circulated promotional materials such as award certificates, t-shirts, and newsletters, bearing this mark. Dkt. 1, Ex. A.

Thus, on August 29, 2016, Springboards filed a complaint ("Complaint") against HISD, Tarheel Promotions, Inc. ("Tarheel"), Augusta Marketing Products, LLC ("Augusta") and Kathy Baker, alleging trademark infringement, trademark dilution, trademark counterfeiting, and unfair competition. Dkt. 1 at 1. Since then, Kathy Baker has been dismissed from the suit. Dkt. 33.

On December 7, 2016, HISD filed its Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6). Dkt. 19. On December 20, 2016, Springboards filed an Unopposed Motion for Extension of Time to Respond to HISD's Motion to Dismiss. Dkt. 26.

## III.  <u>LEGAL STANDARDS</u>

As with all complaints invoking the Court's federal question jurisdiction, a valid complaint under the Lanham Act requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This entails merely providing notice of the claim and

4

the grounds for the claim. *See McCollim v. Allied Custom Homes, Inc.*, CIV. A. H-08-3754, 2009 WL 1098459, at *2–3 (S.D. Tex. Apr. 23, 2009).

At the pleading stage, Springboards need only plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of [an essential element of plaintiff's claim]." *Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 971 (S.D. Tex. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Notice pleading is premised on the fact that federal practice includes "liberal opportunity for discovery" that will later assist a party to "better disclose the basis of a claim" than what is possible at the initial pleading phase.   Id. (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. Finally, assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

The Supreme Court has also acknowledged that "it is well settled that the scope of 'in commerce' as a jurisdictional predicate of the Lanham Act is broad and has a sweeping reach." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952).

## IV.   SPRINGBOARDS' FEDERAL CLAIMS ARE WELL PLEADED AND SHOULD NOT BE DISMISSED UNDER RULE 12(b)(6)

Fifth Circuit case law is clear that "[a] motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Blackmon v. Am. Home Prods. Corp.*,

5

328 F. Supp. 2d 647, 651 (S.D. Tex. 2004) quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In determining whether a claim satisfies Federal Rule of Civil Procedure 12(b)(6), a court must conduct a two-step inquiry. First, "the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff." *Id.* Second, the court must determine whether a claim sets forth a plausible claim for relief and dismisses the claims "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*; *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). When considering the motion, the Court may look to the information contained in the Complaint, and any materials submitted as attachments to the Complaint. Rule 12(b)(6)'s  low threshold is aligned with the purpose of notice pleading: to simply give Defendant notice of the claims, such that the Defendant can prepare a defense.  *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 663-664 (E.D. Tex. 2004).

As the movant, HISD carries the burden of showing that Springboards has failed to plead a claim for relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). HISD has not satisfied this burden and its Motion to Dismiss should be denied.

### A. Springboards has Provided Ample Notice of its Trademark Infringement Claims

HISD presents three primary points in support of its dismissal. Springboards can summarize its arguments against HISD's dismissal as follows: Springboards' identification of its trademarks, combined with several images, newsletters, and flyers that clearly show specific instances of HISD's infringement in Exhibit B to the Complaint, are more than adequate to give HISD notice of what rights it infringed, when the infringement occurred, and what it will be required to defend in the present suit. Springboards responds to each of HISD's points in detail below.

### i. Springboards Adequately Identified its Unregistered Trademarks in its Complaint

HISD argues that Springboards' infringement claims as to its unregistered trademarks should be dismissed because Springboard failed to identify its unregistered trademarks. Dkt. 19 at 10. However, Springboards did identify the unregistered marks.  Those trademarks are merely Springboards' registered marks used in connection with different goods and services than those identified in the registration.  A reading of the complaint makes that clear.

Springboards identified its registered trademarks by providing each trademark's registration number in the Complaint and by attaching each trademark's registration certificate to the Complaint. Dkt. 1, Ex. A; Dkt. 1 at 5. All four of these marks are registered for use in connection with International Class 16 goods[1], which

---

[1] U.S. Reg. No. 3,955,345 is the sole trademark that has both International Classifications 16 and 41. Dkt. 1, Ex. A.

include paper goods such as printed lessons and teaching materials. Springboards' unregistered trademark rights simply include use of *the same marks identified in the Complaint* as registered in in the U.S. Patent and Trademark Office in connection with goods and services outside the scope of International Class 16. The Complaint points out that "Springboards has common law trademark rights in the Springboard unregistered trademarks for use in *connection with products and services in the educational field and other related fields*," a use that is outside of International Class 16, and properly classified in International Class 41. Dkt. 1 at 5, ¶4. That statement, in conjunction with Springboards' identification of each registered trademark, identifies Springboards' unregistered trademark rights. Because HISD is aware of the actual marks in dispute, it has sufficient notice of both the registered and unregistered trademarks and cannot argue that it "remains in the dark about what the alleged unregistered trademarks are." Dkt. 19 at 10.

### ii. Springboards Has Plainly Alleged How HISD Infringed Each of Its Trademarks.

In support of its motion to dismiss, HISD argues that Springboards "fails to include any allegations about how HISD has infringed each of these trademarks." Dkt. 19 at 11. Further, HISD argues that Springboards failed to "identify the allegedly infringing product or service of each of the named defendants." Dkt. 19 at 12. However, a plain reading of the Complaint shows HISD is mistaken.

8

First, Exhibit B of the Complaint contains several images of HISD's trademark counterfeiting and infringement.  Exhibit B includes paper certificates bearing the "Million Dollar Reader" mark, and such certificates to promote reading and language comprehension are listed in the identification of goods in Springboards' registration for the exact same "Million Dollar Reader" mark; consequently, Exhibit B contains an image of HISD's counterfeit certificates. Dkt. 1, Ex. B. Exhibit B also includes a press release describing HISD's summer reading program in which HISD repeatedly used the "Millionaire Club" mark without authorization. *Id*. Moreover, Exhibit B includes newsletters circulated by HISD promoting its summer reading program, and images of infringing products used to promote the program, such as shirts bearing the "Millionaire Club" mark, which is confusingly similar to Springboards' "Millionaire Reader's Club" mark. *Id.*

In spite of these images, HISD boldly claims that "[it] is unclear from the Complaint what Plaintiff is pointing to with regard to HISD's alleged trademark infringement." Dkt. 19 at 11. HISD's statement is plainly contradicted by the examples of counterfeit and infringing products included in Exhibit B. Additionally, HISD itself recognizes that it has notice. *See* Dkt. 19 at 14 ("[as] best HISD can tell, it appears that Plaintiff's trademark infringement allegations stem from HISD's summer reading program."). This statement by HISD is a clear indication that Springboards has satisfied notice pleading.

Second, HISD claims that Springboards "fails to identify the allegedly infringing products or services of each of the named defendants." Dkt. 19 at 12. This assertion is false for several reasons. Springboards has clearly identified the infringing products in Exhibit B of its Complaint. Dkt. 1, Ex. B. As just explained, these images give HISD more than adequate notice of exactly how it is has infringed Springboards' "Million Dollar Reader" and "Millionaire Reader's Club" marks. Additionally, this argument assumes that the Complaint and its Exhibits are not adequate in providing notice to each named defendant, likely because Exhibit B contains images of HISD's summer program, and not images of any event or occasion sponsored by the other defendants. However, the remaining defendants' participation in infringement of Springboards' trademarks is evidenced by the images in Exhibit B as well. While it is true that Springboards must provide adequate notice to each Defendant, which it has done, this does not mean Springboards needs to provide HISD adequate notice of how exactly the other defendants infringed Springboards' trademarks, so long as each Defendant has been put on proper notice.

Finally, HISD's reliance on *Dell, Inc. v. This Old Store, Inc.*, 2007 WL 1958609, at *2 (S.D. Tex. July 2, 2007) is misplaced. In that case, the plaintiff had filed suit against *thirty-four* Defendants *and* had failed to identify *any factual basis* for its allegations. *Dell*, 2007 WL 1958609, at *8-9. ("[t]he allegations does not distinguish among the numerous various Defendants and does not identify any

10

advertisements or other factual basis for the conclusory allegation.") Springboards has only filed suit against four defendants, one of whom has been dropped from the suit; has provided ample notice to each defendant; and has supported each of its allegations with facts. Thus, Springboards has adequately pleaded its claims of trademark infringement against each defendant.

### iii. Springboards Use of Its Marks Constitutes "Use in Commerce" under the Lanham Act.

Finally, HISD mistakenly argues that its use of Springboards' trademarks and marks confusingly similar to the Springboards marks is not a "commercial use" as defined by the Lanham Act. Dkt. 19 at 13. HISD's assertion is wrong because it misstates the "commercial use" requirement of the Lanham Act. Use in commerce does not exclude non-profit uses.

HISD argues that because it did not profit from the summer reading program, the program is not a "commercial use." Dkt. 19 at 15. However, making a profit is not a requirement for a Lanham Act claim. "[T]he history and text of the Lanham Act show that 'use in commerce' reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause, rather than to limit the Lanham Act to profit-seeking uses of a trademark." *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2nd Cir. 1997). The phrase "commercial use," as applied to Lanham Act claims, refers to Congress's broad powers under the Commerce Clause, and it does not limit the Lanham Act only to for-profit or purely

11

commercial transactions. *See id.* (citing *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 185 (W.D.N.Y. 2000) ("'Use in commerce' is simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause.")). The Lanham Act has "been applied to defendants furnishing a wide variety of non-commercial public and civic benefits." *See United We Stand Am*, 128 F. 3d 86 at 90 (citing to cases where the Lanham Act was applied to public service projects such as the Special Olympics, half-way houses, community betterment programs, and solicitation of donations). Thus, HISD's assertion that it did not profit from its infringement does not defeat Springboards' Lanham Act claims.

### B. Springboards Adequately Pleaded Every Element of a Trademark Dilution Claim

HISD claims that Springboards "fail[ed] to allege viable facts to support that its trademark is famous and distinctive and that HISD used the trademark in a noncommercial manner." Dkt. 19 at 16. For the reasons stated above, HISD's argument regarding its use of Springboards' trademarks in a noncommercial manner is incorrect. Springboards responds to the remaining allegation as follows:

First, Springboards has already stated that, at the notice pleading stage, the Court must accept all facts in the Complaint as true. *Blackmon*, 328 F. Supp. 2d 647 at 651. Springboards' Complaint states that "[t]he Springboard brand and Trademarks are strong and distinctive marks and have achieved notoriety and widespread public recognition." Dkt. 1 at 15. The Complaint also explains that

Springboards has been using its marks since 2005 and that "the marks have acquired enormous value and recognition in the United States and elsewhere throughout the world." Dkt. 1 at 4-5. Finally, the Complaint shows that HISD used the "Million Dollar Reader" and "Millionaire Club" marks, thereby lessening the distinctiveness of Springboards' "Million Dollar Reader" and "Millionaire Reader's Club" marks. These facts, taken as true, are sufficient to support a cause of action for trademark dilution. *Films of Distinction v. Allegro Film Prods.*, 12 F. Supp. 2d 1068, 1079 (C.D. Cal. 1998) (denying defendant's motion to dismiss "where plaintiff has alleged that its mark is 'inherently distinctive' and 'has become known to the consuming public as identifying and distinguishing plaintiff exclusively and uniquely as the source of the services to which the Mark applies'")

### C. Springboards Adequately Pleaded Every Element of a Trademark Counterfeiting Claim

HISD claims that Springboards' pleading is deficient because it "fails to allege that HISD produces or resells products or any tangible goods with Plaintiff's trademark," "fails to state a claim for trademark infringement," and "fails to allege plausibly that HISD acted in a calculated and intentional manner to reproduce Plaintiff's trademarks." Dkt. 19 at 18.

First and most importantly, HISD has used the exact "Million Dollar Reader" and "Millionaire Reader" marks on paper goods as demonstrated in Exhibit B to the Complaint. Dkt. 1, Ex. B at 10 (showing paper certificates or posters bearing the

"Million Dollar Reader" mark); Dkt. 1, Ex. B at 13 (showing a printed document bearing the "Millionaire Reader" mark). Springboards owns registrations for certificates, posters, and other printed goods in International Class 16 for the "Million Dollar Reader" and "Millionaire Reader" marks. As a result, the statement that the Complaint "fails to allege that HISD produces or resells products or any tangible goods with Plaintiff's trademark" is flatly incorrect, as the counterfeit goods are shown in Exhibit B to the Complaint.

Moreover, HISD misstates the requirements for pleading trademark counterfeiting. Even though there is reason to believe that HISD produced the paper goods bearing Springboards' registered marks based on the goods displayed in Exhibit B to the Complaint, trademark counterfeiting does not require Springboards to show that HISD produces or resells the counterfeit goods. Instead, the law requires the plaintiff to show that the defendant infringed its trademarks, and that the infringement was intentional. *Interstate Batter Sys. of Am. v. Wright*, 811 F. Supp. 237, 243 (N.D. Tex. 1993) quoting 15 U.S.C. §1117(b). ("In order for Plaintiff to prevail on its counterfeiting claim, it must show that Defendant infringed a registered trademark in violation of 15 U.S.C. 1114(a)(1) and also that they 'intentionally used a mark...knowing such mark...is a counterfeit mark.'")

As explained above, Springboards has properly pleaded its claim for trademark infringement of both its registered and unregistered trademarks. With

regards to the intent requirement, Springboards' Complaint clearly alleges that HISD "has acted with knowledge of Springboards' ownership of the Springboard brand and Trademarks and with deliberate intention or reckless disregard…" Dkt. 1 at 10. To support this allegation with facts, Springboards submitted multiple documents in Exhibit B of the Complaint showing HISD's blatant infringing use of Springboards' trademarks. Dkt. 1, Ex. B, including: images of program participants holding certificates bearing Springboards' marks; images of staff wearing t-shirts bearing the infringing mark; a blog post found on HISD's website describing its summer reading program ("Millionaire Club") who's name infringes Springboards' trademarks; an award for a teacher who actively participated in Millionaire Club; and various other flyers, newsletters, and images bearing Springboards' mark. *Id.* Springboards has promoted its trademarks since 2005, and the documents in Exhibit B indicate that HISD's summer program goes as far back as at least 2012, and has been organized by the district for multiple summers.[2] By demonstrating that HISD's infringing activity has continued for years despite Springboards' use, promotion, and registration of its trademarks, Springboards has set forth a plausible claim for relief of trademark counterfeiting.

## V. **SPRINGBOARDS' STATE LAW CLAIMS SHOULD NOT BE DISMISSED.**

HISD argues that Springboards' Texas Anti-Dilution claim, common law

---

[2] *See* Dkt. 1, Ex. B at 4, 7. ("Katherine Smith participates in this reading program every summer.")

trademark claim, and common law unfair competition claim should be dismissed on the basis of sovereign immunity. HISD is not protected by sovereign immunity for the reasons below.

### A. HISD's Unauthorized Use of Springboards' Trademarks Is Not a Governmental Function Entitled to Governmental Immunity.

The term "sovereign" generally applies to large governmental entities, such as states and their agencies. *See Wasson Interest, Ltd. v. City of Jacksonville*, 489 S.W. 3d 427, 433 (Tex. 2016) (describing distinctions). Smaller units such as "counties, cities, or whatever – never have been considered as sovereign entities." *Reynolds v. Sims*, 377 U.S. 533, 575 (1964). These smaller entities perform both "governmental" functions – such as duties "pertaining to the administration of general laws," and "proprietary functions" which are functions "performed by a city [or other state run entity], in its discretion, primarily for the benefit of those within the corporate limits of the municipality." *Wasson*, 489 S.W.3d at 433; *City of Georgetown v. Lower Colorado River Auth.*, 413 S.W.3d 803, 807 (Tex. App. – Austin 2013, pet. dism'd) (quoting *Gates v. City of Dallas*, 704 S.W.2d 737, 738-39 (Tex. 1986)). The governmental functions of smaller governmental entities receive immunity; their proprietary functions do not. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (noting municipality is not immune from suit for torts committed in performance of proprietary functions as it is for torts committed in performance of governmental functions).

HISD argues that, as a school district, it is immune from Springboards' state law claims based on governmental immunity. Springboards acknowledges that case

law in Texas has found school districts to be purely governmental entities. However, Texas courts have never been presented with the issue of whether trademark infringement is within a school district's governmental function. HISD's governmental function is to promote education, not to trample Springboards' trademark rights. Allowing school districts to infringe intellectual property rights as part of their exercise of a governmental function is allowing them to confiscate property rights that owners have earned through expending time and effort, and then use that goodwill for their own benefit.

Additionally, as recently as 2011, Texas courts have acknowledged that it may be possible for school districts to engage in proprietary functions, which would eliminate their governmental immunity. *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 358 S.W.3d 725, 737 (Tex. App. 2011) (citing to *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 809 (Tex. App. – Houston [14th Dist.] 2010, no pet.) for the proposition that the law is unclear regarding whether or not school districts can engage in both governmental and proprietary functions). Multiple Texas courts have opined that Texas school districts are immune from suit, *while exercising governmental functions*, a distinction which would be unnecessary if school districts could not engage in proprietary functions. *See Galveston*, S.W.3d 802 at 809 ("Clear Lake argues that courts would not have included the qualifying language "while exercising governmental functions" unless school districts had the

17

capacity to engage in non-governmental functions.). Thus, HISD is not immune from suit for actions carried out in its proprietary capacity.

### B. If the Immunity Doctrine Forecloses a Remedy, HISD's Infringement Constitutes a Taking

In the event that Springboards has no state law remedy against HISD due to sovereign immunity, HISD's infringement of Springboards' intellectual property rights constitutes a governmental taking and the Court should grant leave for Springboards to amend its Complaint to allege this cause of action.

Both the United States Constitution and Texas Constitution prohibit the government from taking private property from any person or entity without compensation. *See* U.S. Const. amend. V ("Nor shall private property be taken for public use without just compensation."); U.S. Const. amend. IXV ("nor shall any state deprive any person of life, liberty, or property, without due process of law."); Tex. Const. art. I, § 17(a)(1). The Supreme Court has held that "governmental regulation can constitute a taking of property requiring compensation," and that theft of intellectual property rights are protected by the Takings Clause of the Fifth Amendment. *Lucas v. So. Carolina Coastal Council*, 505 U.S. 1003, 1027-28 (1992); *Eastern Enterprises v. Apfel*, 524 U.S. 498, 537 (1998). Thus, if Springboards has been denied enforcement of its trademark rights due to the doctrine of sovereign immunity, HISD's actions constitute a taking both under the United

States Constitution and the Texas Constitution, and this Court should grant Springboards leave to amend its Complaint.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiff Springboards to Education, Inc. respectfully requests this Court to deny Defendant Houston Independent School District's Motion to Dismiss Pursuant to 12(b)(1) and (6).

Dated: January 18, 2017                    Respectfully submitted,

*s/ Russell T. Wong*
Russell T. Wong
*Attorney-In-Charge*
TX Bar No. 21884235
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, TX 77002
rwong@blankrome.com
Telephone: (713) 228-6601
Facsimile: (713) 228-6605

Matthew A. Homyk
PA Bar No. 312265
*Admitted Pro Hac Vice*
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
mhomyk@blankrome.com
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

19

Ruben C. DeLeon
(admitted *pro hac vice*)
TX Bar No. 00790577
DELEON LAW GROUP PC
15851 Dallas Parkway, Suite 600
Addison, TX 75001
rdeleon@deleonlawgroup.com
Telephone: (214) 561-8687
Facsimile:  (877) 488-8983

*Counsel for Plaintiff*
*Springboards for Education, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 18, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  All counsel-of-record are being served with a copy of this document via the CM/ECF system per Local Rules 5.1 and 5.3.

| | |
|---|---|
| Jonathan R Spivey  (LEAD ATTY)<br>LaTasha Mabry Snipes<br>BRACEWELL GIULIANI LLP<br>711 Louisiana Street, Suite 2300<br>Houston, TX 77002<br>jonathan.spivey@bgllp.com<br>tasha.snipes@bracewelllaw.com<br><br>*Counsel for Defendant*<br>*Houston Independent School District* | John K. Edwards  (LEAD ATTY)<br>William J. Stowe<br>JACKSON WALKER LLP<br>1401 McKinney Street, Suite 1900<br>Houston, TX 77010<br>jedwards@jw.com<br>wstowe@jw.com<br><br>*Counsel for Defendants*<br>*Tarheel Promotions, Inc. and*<br>*Augusta Group, LLC* |

s/ *Lynn Marlin*
Lynn Marlin