United States District Court
Southern District of Texas
**ENTERED**
January 22, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPRINGBOARDS TO EDUCATION, INC., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-16-2625 |
| HOUSTON INDEPENDENT SCHOOL DISTRICT | § § § § | |
| Defendant. | § | |

ORDER

Pending before the Court are Houston Independent School District's Motion for Summary Judgment (Document No. 133) and Plaintiff Springboards to Education, Inc.'s Motion for Summary Judgment (Document No. 138). Having considered the motions, submissions, and applicable law, the Court determines Houston Independent School District's motion for summary judgment should be granted and Springboards to Education Inc.'s motion for summary judgment should be denied.

I.  BACKGROUND

This is a trademark infringement case. Plaintiff Springboards to Education Inc. ("Springboard") is a Texas corporation that designs, markets, and sells reading and other education-related products and programs. Springboard owns multiple

federally registered trademarks related to its products and programs ("Springboard's Marks"). Defendant Houston Independent School District ("HISD") is a Texas independent school district. From 2008 to 2013, HISD offered a free summer reading program to HISD students called the Houston ISD Millionaire Club (the "Millionaire Club"). Springboard alleges HISD used multiple products and services in connection with the Millionaire Club that infringed on Springboard's Marks.

Based on the foregoing, on August 29, 2016, Springboard filed this lawsuit against HISD[1] alleging trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and unconstitutional takings under Texas and federal laws. On September 20, 2016, the Court dismissed Springboard's state law claims for trademark dilution, trademark infringement, and unfair competition. Only Springboard's federal Lanham Act claims and state and federal takings claims remain. On October 2, 2017, HISD and Springboard cross-moved for summary judgment on Springboard's federal Lanham Act claims.

---

[1] Springboard initially pleaded claims against three other defendants. However, aside from HISD, all other defendants have been dismissed from this case. *Plaintiff Springboards to Education, Inc.'s Notice of Voluntary Dismissal Pursuant to FRCP 41(a)(1)(A)(i)*, Document No. 30; *Order of Dismissal with prejudice as to Tarheel Promotions, Inc.*, Document No. 43; *Order Granting Joint Motion to Dismiss Certain Claims and Parties*, Document No. 119.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l*

*Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

### III. LAW & ANALYSIS

Springboard brings federal Lanham Act claims and state and federal constitutional takings claims against HISD. HISD and Springboard cross-move for summary judgment on Springboard's federal Lanham Act claims. HISD additionally moves for summary judgment on Springboard's state and federal

constitutional takings claims. The Court first addresses Springboard's federal Lanham Act claims and then turns to Springboard's constitutional takings claims.

A. *Federal Lanham Act Claims*

Springboard brings claims against HISD under the federal Lanham Act for (1) trademark counterfeiting; (2) trademark infringement; (3) false designations; and (4) trademark dilution. HISD and Springboard cross-move for summary judgment on Springboard's federal Lanham Act claims. HISD contends summary judgment is proper on Springboard's federal Lanham Act claims because Springboard cannot prove HISD engaged in commercial use of Springboard's Marks. Springboard contends it can show HISD engaged in commercial use of Springboard's Marks.

As to Springboard's trademark dilution claim, the Lanham Act specifically excludes "[a]ny noncommercial use of a mark." 15 U.S.C. § 1125(c)(3). As to Springboard's trademark counterfeiting, trademark infringement, and false designations claims, the statutory requirement that the plaintiff's mark be used "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" requires commercial use of the plaintiff's mark. 15 U.S.C. §§ 1114, 1125; *see Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 676–77 (9th Cir. 2005). Thus, commercial use is required for all of Springboard's claims brought pursuant to the Lanham Act.

The commercial use requirement is rooted in Congress's ability to regulate commercial speech. Therefore, the United States Supreme Court's commercial speech doctrine and the purpose of the Lanham Act are relevant to the Court's inquiry as to what constitutes commercial use. *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 547–52 (5th Cir. 2001), *abrogated on other grounds by Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 134 S. Ct. 1377; *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 323 (4th Cir. 2015). When all of the following three factors are present, there is strong support that the speech is commercial: "(i) the communication is an advertisement, (ii) the communication refers to a specific product or service, and (iii) the speaker has an economic motivation for the speech." *Procter & Gamble*, 242 F.3d at 552 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983)). Moreover, the purpose of the Lanham Act is "to protect the ability of consumers to distinguish among competing products." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985)).

Springboard contends it can show HISD engaged in commercial use of Springboard's Marks because: (1) HISD sold and distributed products containing Springboard's Marks; (2) HISD's print shop made a profit by printing flyers and reading logs containing Springboard's Marks; and (3) HISD used Springboard's

6

Marks to promote its reputation and attract more students to HISD. The Court addresses each of Springboard's contentions in turn.

*1.   Sale and Distribution of Products*

Springboard alleges HISD created, sold, and distributed thousands of products bearing Springboard's Marks, such as t-shirts, reading logs, brochures, and bumper stickers, in connection with the Millionaire Club. HISD contends: (1) there is no evidence that HISD sold or offered for sale any items containing Springboard's Marks; and (2) that distributing items free of cost to students in HISD does not constitute commercial use.

As to Springboard's allegation that HISD sold infringing products, it is undisputed that HISD sold t-shirts in connection with its "Name That Book" contest, a separate and independent program from the Millionaire Club. It is further undisputed that the t-shirts in connection with the "Name That Book" contest did not contain Springboard's Marks. The Court finds that the summary judgment record cited by both parties supports HISD's allegations that: (1) the products in connection with the Millionaire Club, such as reading logs, flyers, and bracelets, were distributed free of charge to students as an incentive to participate in the Millionaire Club; and (2) HISD did not sell or offer for sale any items in connection with the Millionaire Club or containing Springboard's Marks. As to Springboard's allegation that HISD created and distributed items bearing

7

Springboard's Marks, the Court finds that creating and distributing items free of charge to students as an incentive to participate in a free local public education reading program is not commercial use of Springboard's Marks. The Court therefore finds that Springboard's allegation that HISD created, sold, and distributed products containing Springboard's Marks is insufficient to satisfy the commercial use requirement for Springboard's federal Lanham Act claims. *See Burlington N. Santa Fe Corp. v. Purdy*, No. 98-11485, 1999 WL 1328011, at *1 (5th Cir. Dec. 7, 1999) (holding a mark did not fall within the Lanham Act because the mark was not used "in furtherance of a business intended to provide services for reimbursement").

    2.    *Print Shop*

Springboard contends HISD engaged in commercial use of Springboard's Marks because HISD's print shop ("Print Shop") profited from the sale of flyers and reading logs to HISD. HISD contends Print Shop is not an entity separate from HISD and because all printing services were provided to HISD, HISD did not engage in commercial use of Springboard's Marks. It is undisputed that Print Shop charged HISD's Department of Library Services ("Library") for printing reading logs and flyers in connection with the Millionaire Club. It is further undisputed that Print Shop and Library are departments within the same entity—HISD. The Court finds that HISD's internal transaction between Print Shop and Library regarding

printing flyers and reading logs for the Millionaire Club does not satisfy the commercial use requirement for Springboard's federal Lanham Act claims. *See In re Canadian Pacific Ltd.*, 754 F.2d 992, 994 (Fed. Cir. 1985) (holding that offering services for sale to shareholders of a corporation do not constitute sales to another and thus do not fall within the Lanham Act).

    3.    *Promotion of HISD's Reputation*

Springboard contends HISD engaged in commercial use of Springboard's Marks because HISD used Springboard's Marks in connection with advertising and promoting HISD's reputation. It is undisputed that Springboard posted pictures on the internet and received sports ticket donations for HISD students in connection with the Millionaire Club. Springboard contends HISD's postings on the internet and community publicity gained from receiving sports ticket donations for students enrolled in the Millionaire Club constitutes commercial use because the activities were done with economic incentive to increase the appeal of HISD to students which in turn would lead to increased state funding. HISD contends that (1) Springboard's citations to articles and webpages are not relevant and should thus be disregarded; and (2) there is no evidence that HISD used Springboard's Marks with an economic incentive to promote itself.[2]

---

[2] Springboard relies in part on its complaint to support its contention that HISD used Springboard's Marks with an economic incentive. HISD contends Springboard's complaint should be disregarded because it is not proper summary judgment evidence.

9

On a motion for summary judgment, a non-moving party must provide evidence that meets the admissibility standards at trial. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "Irrelevant evidence is not admissible" at trial. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. In support of its contentions, Springboard cites (1) a Show-Me Institute article from August 26, 2011, regarding the effects of school district rankings and property tax rates in Richmond Heights, Missouri; (2) a PTO Today article from March 2, 2017, regarding a parent-teacher-association in Manhattan, New York; (3) a School Digger webpage regarding public school rankings in New York; (4) a Texas Education Agency webpage regarding state funding and school finance in Texas; (5) a CNBC article from December 14, 2010, regarding property taxes; (5) an NPR article from April 18, 2016, titled "Why America's Schools Have a Money Problem," regarding a national survey on the difference between geographically rich and poor school districts; and (6) a School Compass article regarding the impact of local education on economic development (the "Articles").

---

The Court construes HISD's contention as an objection to Springboard's complaint as improper summary judgment evidence. Pleadings, including a complaint, are improper summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Accordingly, HISD's objection is sustained.

The Articles do not discuss HISD or pertain to HISD's alleged infringing conduct—using Springboard's Marks with an economic incentive to attract more students to HISD and thus increase state funding to HISD. The Court therefore finds the Articles do not have a tendency to make HISD's alleged economic incentive in connection with the Millionaire Club more or less probable. Thus, the Court finds the Articles are not relevant and therefore not admissible to support Springboard's contention that HISD had an economic incentive to use Springboard's Marks. Absent the Articles, there is no other competent summary judgment evidence to support Springboard's contention that HISD used Springboard's Marks with an economic incentive to attract students to HISD.[3] Accordingly, HISD's motion for summary judgment is granted as to Springboard's federal Lanham Act claims for trademark counterfeiting, trademark infringement, false designations, and trademark dilution.[4]

---

[3] Springboard also cites "Guerra Decl. ¶ 13" in support of its contention that HISD used Springboard's Marks to promote its reputation in the community. *Plaintiff Springboards To Education, Inc.'s Motion for Summary Judgment*, Document No. 138 at 23. The Court notes however that a declaration by Guerra was not attached to Springboard's motion and the Court could not otherwise locate such a declaration.

[4] HISD also contends summary judgment is proper because Springboard's claims are barred by the statute of limitations and laches and because Springboard cannot show: (1) an impact on interstate commerce; (2) likelihood of confusion; (3) that HISD's products or services were identical to or substantially indistinguishable from Springboard's Marks; (4) that HISD used Springboard's Marks intentionally; (5) a false or misleading statement by HISD that deceived a substantial segment of potential consumers in support of Springboard's false designation claim; and (5) that Springboard's marks are famous and distinctive in support of its trademark dilution

B.   *Springboard's Taking Claims*

Springboard brings state and federal takings claims against HISD. HISD contends summary judgment is proper on Springboard's state and federal takings claims because Springboard's federal Lanham Act claims are ripe for adjudication.

Section 17 of the Texas Constitution states that "[n]o person's property shall be taken damaged, or destroyed for or applied to public use without adequate compensation." Tex. Const. art. I, § 17(a). Similarly, the Fifth Amendment of the United States Constitution states that no "private property be taken for public use, without just compensation." U.S. Const. amend. V. The state and federal constitutional takings provisions protect individuals from governmental takings of private property without just compensation. A trademark is a constitutionally protectable property interest. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999); *Chavez v. Arte Publico Press*, 204 F.3d 601, 605 n. 6 (5th Cir. 2000). A political subdivision of the state, including a public school district, is considered a government agency for purposes of takings claims. *See City of El Paso v. Mazie's L.P.*, 408 S.W.3d 13, 18 (Tex. App.—El Paso 2012, no pet.). Thus, governmental immunity does not bar state and federal

---

claim. However, in light of the Court's holding, the Court need not address these contentions.

takings claims. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001).

Springboard bases its state and federal takings claims on HISD's alleged infringement of Springboard's trademarks. Although the Court held HISD has governmental immunity as to Springboard's state law claims,[5] HISD does not have immunity as to Springboard's state and federal takings claims. As to Springboard's federal takings claim, a federal takings claim is not ripe for adjudication until a plaintiff has brought and been denied just compensation under a state takings claim. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 197 (1985). Further, an unripe federal claim cannot be the basis for federal subject matter jurisdiction. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). Springboard has not yet adjudicated its state law takings claim. The Court therefore finds that Springboard's federal takings claim is not ripe for adjudication. Accordingly, HISD's motion for summary judgment is granted as to Springboard's federal takings claim.

As to Springboard's state takings claim, when federal claims that serve as the basis of a court's subject matter jurisdiction are dismissed, a district court has broad discretion in declining to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c). Having granted summary

---

[5] *Order*, Document No. 126 at 5.

judgment on all of Springboard's federal claims, the Court declines to exercise supplemental jurisdiction over Springboard's state takings claim.[6] The Court therefore finds it does not have subject matter jurisdiction over Springboard's state takings claim. Accordingly, HISD's motion for summary judgment is granted as to Springboard's state takings claim.

## IV.  CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Houston Independent School District's Motion for Summary Judgment (Document No. 133) is **GRANTED**.

**ORDERS** that Plaintiff Springboards to Education, Inc.'s Motion for Summary Judgment (Document No. 138) is **DENIED**.[7]

---

[6] The Court further finds the parties are not citizens of different states and thus the Court also does not have diversity jurisdiction. 28 U.S.C. § 1332.

[7] Also pending before the Court are Houston Independent School District's Opposed Motion to Strike Plaintiff's Expert Report (Document No. 135), Opposed Motion to Exclude Expert Testimony (Document No. 136), Houston Independent School District's Objections and Motion to Strike Springboards to Education, Inc.'s Summary Judgment Evidence (Document No. 153), Houston Independent School District's Motion to Disqualify Ruben DeLeon as Trial Counsel for Plaintiff (Document No. 171), Houston Independent School District's Motion in Limine (Document No. 173), Springboards to Education, Inc.'s Motion in Limine to Exclude the Deposition Testimony of Johnny Lopez (Document No. 175), Springboards to Education, Inc.'s Motion in Limine to Exclude the Deposition Testimony of Maria Ester Espericueta (Document No. 176), Springboards to Education, Inc.'s Motion in Limine to Exclude the Deposition Testimony of Dr. James Kim (Document No. 177), Springboards to Education, Inc.'s Motion in Limine to Exclude the Deposition Testimony of Dona Rintelman (Document No. 178), and Springboards to Education, Inc.'s Motion in Limine to Exclude the Deposition Testimony of Ruben DeLeon, Counsel for Springboards to Education, Inc. (Document

The court will issue a separate final judgment.

SIGNED at Houston, Texas, on this 22 day of January, 2018.

                                                    DAVID HITTNER
                                                United States District Judge

---

No. 179) (the "Remaining Pending Motions"). In light of the Court's holding, the Court orders that the Remaining Pending Motions are denied as moot.